EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Oscar García Rivera<br>(TS-15,729) | 2026 TSPR 81<br><br>218 DPR ___ |
|---|---|

Número del Caso: CP-2025-0002

Fecha: 31 de julio de 2026

Oficina del Procurador General:

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcdo. Edwin B. Mojica Campos
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

    Lcdo. Delfín R. Méndez Badui
    Procurador General Auxiliar

Representantes legales del querellado:

    Lcdo. Virgilio Mainardi Peralta
    Lcdo. Luis Manuel García Tous
    Lcdo. Alfredo Ortiz Rivera

Comisionado Especial:

    Hon. Jorge Toledo Reyna

Materia: Conducta Profesional – Censura enérgica y apercibimiento por infringir los Cánones 18 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Oscar García Rivera          CP-2025-0002
    (TS-15,729)

*PER CURIAM*

En San Juan, Puerto Rico, a 31 de julio de 2026.

Hoy nos vemos precisados a ejercer nuestra facultad disciplinaria sobre un miembro de la profesión legal cuyas actuaciones ameritan un análisis integral de los preceptos éticos aplicables y de las circunstancias particulares. En el descargue de nuestra responsabilidad de reglamentar la abogacía, procedemos a censurar enérgicamente y apercibir al Lcdo. Oscar García Rivera (licenciado García Rivera) por infringir los Cánones 18 y 38 del derogado Código de Ética Profesional, 4 LPRA Ap. IX, al este ser el estatuto ético vigente al momento en que ocurrieron los hechos. A continuación, repasamos el tracto de los acontecimientos que dieron paso a esta acción disciplinaria.

**I.**

El 31 de enero de 2006 admitimos al licenciado García Rivera al ejercicio de la abogacía.

En lo pertinente a la *Querella* ante nuestra consideración, el 11 de agosto de 2023 el Tnte. II Reynaldo Malavé Ortiz (teniente Malavé Ortiz), oficial del Negociado de la Policía de Puerto Rico (NPPR), presentó la queja AB-2023-0194 en contra del licenciado García Rivera. Los hechos se remontan al 20 de julio de 2023 a las 8:33 p.m., cuando el Agte. Joe S. Miller Colón, Placa 34719 (agente Miller Colón) intervino con el Sr. Edwin A. Santiago Alvarado (Conductor) por conducir un vehículo en exceso de velocidad. Según el relato, el agente Miller Colón se percató de que el Conductor estaba en un aparente estado de embriaguez, por lo que realizó las *Advertencias a Persona Bajo los Efectos de Bebidas Embriagantes, Droga y/o Sustancias Controladas* (PPR-615.6)[1] y lo transportó al Distrito de Aibonito para someterlo a la prueba de aliento.

El teniente Malavé Ortiz explicó que el licenciado García Rivera se personó al cuartel y, ante la solicitud

---

[1] El documento PPR-615.6 titulado *Advertencias a persona bajo los efectos de bebidas embriagantes, drogas y/o sustancias controladas* dispone que, ante la negativa de una persona a someterse a un "análisis (aliento) o los análisis (sangre) que le sean requeridos[] para determinar [] el contenido de alcohol en su organismo", se le arrestará para trasladarla a una facilidad médico-hospitalaria a fin de extraer las muestras pertinentes. En ese contexto, cuando se pone bajo la custodia gubernamental a una persona, procede hacerle las advertencias debidas para orientarla sobre sus derechos constitucionales. A esos efectos se creó el documento PPR-615.4 sobre *Advertencias Miranda para persona sospechosa en custodia*, el cual, entre otras cosas, advierte a la persona que tiene derecho a permanecer callada y negarse a contestar preguntas; que todo lo que diga puede utilizarse en su contra en un tribunal de derecho; que tiene el derecho de consultar con un(a) abogado(a) antes de hablar con un(a) oficial de la policía, y que tiene derecho a tener a un(a) abogado(a) presente mientras se le interroga.

de que presentara su credencial como abogado, se mostró molesto. Añadió que, luego de que le permitieron acceso a donde estaba el Conductor, el letrado solicitó al agente Miller Colón que expidiera únicamente los boletos de faltas administrativas y manifestó que el Conductor pediría disculpas. Apuntaló que, más adelante, el licenciado García Rivera dialogó con él, junto al agente Miller Colón, en el estacionamiento del cuartel, donde reiteró su petitorio de que expidieran únicamente los boletos de faltas administrativas y que no realizaran la prueba de alcohol. Indicó que este hizo alusión al hecho de que el Conductor era veterano de la milicia y empleado federal del correo, por lo que podía perder su empleo si lo procesaban por el delito de conducir en estado de embriaguez. El teniente Malavé Ortiz aseguró responder que el proceso para medir la concentración de alcohol mediante el instrumento Intoxilyzer modelo 900 inició y que tenía una tarjeta asignada. Arguyó que el letrado le contestó que "dicha tarjeta se podía desaparecer y/o que se podía poner a otra persona a soplar por su cliente".[2] Ante su negativa, expresó que el letrado pasó al área donde se encontraba el Conductor y allí repitió su solicitud al Sgto. Alexander Rodríguez Gratacós (sargento Rodríguez Gratacós).

El teniente Malavé Ortiz narró que cuando el agente Miller Colón se disponía a comenzar con la prueba, el licenciado García Rivera comunicó algo al oído del Conductor

---

[2] *Queja*, pág. 2.

y requirió –de forma burlona– una orden de allanamiento que autoriza los análisis correspondientes. Detalló que el agente Miller Colón dejó el instrumento y llamó a la Fiscal Auxiliar de turno de la fiscalía de Aibonito, Lcda. Brenda L. Soto Santiago (fiscal Soto Santiago), quien ordenó diligenciar la documentación sobre registro y allanamiento para realizar una prueba de sangre al Conductor. El teniente Malavé Ortiz consignó que, durante ese proceso, el licenciado García Rivera dialogó con el Conductor por un periodo de más de diez (10) minutos. Adujo que se acercó para informarle que el proceso debía continuar, pero el letrado se molestó. Puntualizó que le solicitaron a este último permanecer cerca del área; no obstante, alegó que se molestó nuevamente, y comenzó a gritar y a grabar con su teléfono celular sin la debida autorización. Expuso que, en tono agitado, el letrado reclamó los derechos del Conductor y que, con su conducta, dilató y obstruyó los procedimientos, pues sus gritos impedían que el agente Miller Colón escuchara claramente las instrucciones de la fiscal Soto Santiago.

Finalmente, puntualizó que al licenciado García Rivera se le permitió dialogar nuevamente con el Conductor y que, en esa ocasión, le orientó a no permitir la extracción de sangre sin antes corroborar que la orden tuviera los sellos oficiales correspondientes. Posteriormente, el letrado abandonó el cuartel y publicó en sus redes sociales el contenido que grabó con su teléfono celular.

El 21 de noviembre de 2023 el licenciado García Rivera

presentó su contestación a la queja en la que rechazó las alegaciones del teniente Malavé Ortiz. Esgrimió que se acercó a los agentes para indagar el motivo de la intervención y que le expresó al agente Miller Colón que conocía al Conductor desde hace varios años. En específico, esbozó que este era un ciudadano ejemplar, un veterano retirado, un padre de familia con dos (2) hijos, y que se desempeñaba como cartero en Aibonito. Afirmó que el agente Miller Colón le advirtió al Conductor sobre su derecho a negarse a la prueba de aliento, por lo que a las 9:38 p.m. este informó que no se sometería a dicha prueba y requirió una orden judicial para la prueba de sangre. Señaló que, a partir de ese momento, los agentes se mostraron molestos y, subsiguientemente, entorpecieron, interrumpieron y denegaron la comunicación entre él y el Conductor. Estando este último bajo arresto, el letrado precisó que el teniente Malavé Ortiz permitió que conversaran, pero los interrumpía constantemente bajo el argumento de que debía mantener al detenido en observación. No obstante, el licenciado planteó que la puerta estaba abierta y era transparente, por lo que no se justificaba que la observación continua incluyera la aproximación física.

Entre otras cosas, el letrado explicó que salió del cuartel en un momento determinado para atender una llamada telefónica y, a su regreso, solicitó culminar la conversación con el Conductor. Adujo que los agentes negaron su petitorio y le indicaron que no podría tener más acceso.

Expuso que el sargento Rodríguez Gratacós se dirigió al Conductor, a pesar de que unos minutos antes este último manifestó que no renunciaba a sus derechos, los cuales incluían consultar con un abogado antes de hablar con un oficial del NPPR. Señaló que

> [a]nte la impropiedad de lo atestado y la indignidad que ello [le] generó [,] hizo lo único que en ese momento podía hacer, a saber: no solamente exigir con la mayor vehemencia el acceso a su cliente, sino ahora también exigir con igual tesón que el sargento desistiera de dirigirse al cliente.[3]

Finalmente, el licenciado García Rivera sostuvo que procuró cumplir con su deber de dirigirse respetuosamente, pero reconoció que en el proceso de defender los derechos del Conductor pudo herir sensibilidades por su estilo acucioso de argumentación. Por ello, expresó disculpas a los agentes interventores y a este Tribunal.

Examinadas las comparecencias, el 21 de diciembre de 2023 referimos el asunto a la Oficina del Procurador General (OPG). El 2 de agosto de 2024 la OPG rindió el *Informe de la Oficina del Procurador Generador de Puerto Rico* en el cual consideró que el licenciado García Rivera infringió los Cánones 13 y 38 de Ética Profesional, *supra*. En particular, entendió que el letrado violó los cánones aplicables por publicar el video que grabó con su celular en el cuartel de la policía. A su vez, entendió que, de merecer credibilidad los testimonios de los oficiales del NPPR en cuanto a que el letrado sugirió intervenir indebidamente en el proceso para medir la concentración de alcohol, este también pudo haber

---

[3] *Informe de la Oficina del Procurador General de Puerto Rico*, pág. 6, citando el escrito de contestación a la queja que presentó el Lcdo. Oscar García Rivera (licenciado García Rivera).

infringido los Cánones 18 y 38 de Ética Profesional, *supra*. Por ello, la OPG recomendó que este Tribunal determinara si procedía la designación de un comisionado o una comisionada especial, a los fines de dilucidar la controversia de credibilidad levantada. En la alternativa, recomendó amonestar al licenciado García Rivera por los hechos sobre los cuales no existía controversia y archivar la queja.

El 29 de agosto de 2024 el letrado presentó una *Breve reacción a informe de la Oficina del Procurador General de Puerto Rico* en la que expresó que comenzó a grabar el incidente con su celular en cuanto los agentes del NPPR le prohibieron reunirse con el Conductor. Consecuentemente, admitió que publicó el contenido en las redes sociales. No obstante, argumentó que, además de tratarse de un incidente aislado, nunca tuvo la intención de faltar el respeto ni afectar los procedimientos. Sostuvo que sus acciones se llevaron a cabo en una intervención en la que se encontraba "ante la honesta y razonable creencia en que los derechos del arrestado se estaban violentando en su presencia".[4] Ante esto, se allanó a la recomendación de la OPG.

En cumplimiento con nuestra orden,[5] el 11 de febrero de 2025 la OPG presentó su *Querella* en la cual, entre otras cosas, detalló que el 20 de julio de 2023 el letrado publicó en su página de Facebook un video sobre lo acontecido en esa fecha en el cuartel de Aibonito entre las 10:15 p.m. y las

---

[4] *Breve reacción a informe de la Oficina del Procurador General de Puerto Rico*, pág. 1.
[5] El 25 de octubre de 2024 emitimos una *Resolución* en la que ordenamos a la Oficina del Procurador General presentar la querella.

10:24 p.m. Surge de su relato que el licenciado García Rivera expresó que el teniente Malavé Ortiz denegó su solicitud de reunirse con el Conductor y, estando la grabación en curso, el teniente Malavé Ortiz expresó que ya se había reunido en dos (2) ocasiones que duraron diez (10) y quince (15) minutos. El letrado manifestó que estaba autorizado a ejercer la abogacía y mostró su identificación a la cámara. La OPG acotó que desde ese momento este habló con un tono de voz más alto. Acto seguido, el letrado volvió a cuestionar la negativa a reunirse con el Conductor, a lo que le repitieron que ya se habían reunido. El teniente Malavé Ortiz le informó al letrado que no podía grabar al Conductor por razones de seguridad.

La OPG detalló que, mientras el teniente Malavé Ortiz intentaba hablar, el licenciado García Rivera preguntó reiteradamente si le permitirían comunicarse con el Conductor. No obstante, el teniente Malavé Ortiz insistió en que ya lo había hecho. Entonces, el letrado alzó más su tono de voz y cuestionó de dónde surgía la limitación de las conversaciones. Volvió a preguntar en varias instancias si le permitirían acceso y manifestó hacer la pregunta a los agentes para presentar la respuesta como prueba en la vista de causa probable para arresto. Más adelante, preguntó repetidamente al teniente Malavé Ortiz si el Conductor se podía ir; no obstante, el teniente replicó que ya había contestado esa pregunta. Ante ese escenario, el letrado le indicó al Conductor que "[el teniente Malavé Ortiz] no

contesta, pues vámonos Edwin, él no contesta, pues no estás detenido, vámonos".[6] En cuanto el Conductor intentó salir del área, el sargento Rodríguez Gratacós expresó que el Conductor estaba detenido y no era libre de irse. En vista de ello, el letrado argumentó que el Conductor tenía derecho a un abogado. Sin embargo, los agentes del NPPR replicaron que ya se le había instruido en múltiples instancias, a lo que el letrado reiteró que la ley no limita el derecho y que estos interrumpieron las conversaciones previas.

Más adelante, según la OPG expone en su *Querella*, la grabación mostró al sargento Rodríguez Gratacós acercarse al Conductor. En ese momento, el licenciado García Rivera comenzó a llamar a su cliente por su nombre e intentó acercarse al área, pero el teniente Malavé Ortiz no lo permitió. Entonces, el letrado le gritó reiteradamente al sargento Rodríguez Gratacós que no hablara con el Conductor, y este le respondió que, de continuar dilatando y obstruyendo el procedimiento, lo arrestaría. La OPG precisó que, con un tono alto y desafiante, el letrado repitió que lo arrestaran mientras el sargento Rodríguez Gratacós intentaba hablar con él.

La OPG expuso que el letrado se mantuvo insistiendo en que no hablaran con el Conductor y el sargento Rodríguez Gratacós replicó que le permitiera hacer su trabajo. Finalmente, en un tono más bajo y tranquilo, nuevamente preguntó si podía hablar con su cliente, pero el sargento

---

[6] *Querella*, pág. 15, citando las expresiones del licenciado García Rivera en el video publicado.

Rodríguez Gratacós negó con la cabeza. El licenciado García Rivera preguntó al agente Miller Colón si podía hablar con su cliente, pero este respondió "negativo". Antes de finalizar la grabación, el letrado preguntó si el Conductor estaba detenido y el agente Miller Colón contestó que sí.

Como resultado del trámite investigativo, la OPG formuló los cargos siguientes en contra del licenciado García Rivera:

> **PRIMER CARGO:** El licenciado García Rivera infringió el Canon 13 de Ética Profesional, 4 LPRA Ap. IX, al publicar, el 20 de julio de 2023, en las redes sociales -su página de Facebook- un video que tomó esa misma noche en el cuartel de Distrito de [Aibonito]. El video incluía imágenes de su cliente -quien estaba detenido por aparentemente conducir bajo los efectos de bebidas embriagantes para la toma de una prueba de su nivel de alcohol- y otros funcionarios y personas que se encontraban en el cuartel, mientras el querellado interactuaba con los funcionarios de[l] NPPR y narraba su opinión sobre el proceder de estos en la intervención con su cliente, lo cual era un probable asunto criminal.

> **SEGUNDO CARGO:** El licenciado García Rivera infringió el Canon 18 de Ética Profesional, *supra*, cuando -la noche del 20 de julio de 2023 en el cuartel de Distrito de Aibonito- requirió a funcionarios de[l] NPPR que permitieran a su cliente -quien había sido detenido por presuntamente conducir un vehículo de motor bajo la influencia de bebidas embriagantes- irse sin que se le hiciera la prueba de alcohol, y cuando les indicó o sugirió que la tarjeta de la prueba de alcohol podía desaparecer o que podía soplar alguien más en lugar de su cliente.

> **TERCER CARGO:** El licenciado García Rivera violó el Canon 38 de Ética Profesional, *supra*, ante su comportamiento la noche del 20 de julio de 2023 en el Cuartel de Distrito de Aibonito. Esto, al querellado requerir a funcionarios de[l] NPPR que permitieran a su cliente -quien había sido detenido por presuntamente conducir un vehículo de motor bajo la influencia de bebidas embriagantes- irse sin que se le hiciera la prueba de alcohol, e indicarles o sugerirles que la tarjeta de la prueba podía desaparecer o que podía soplar alguien más en lugar de su cliente. Además, gritó, interrumpió, retó y desafió las instrucciones y la autoridad de los miembros de[l] NPPR en el cuartel mientras intervenían con su cliente. A su vez, el querellado publicó en las redes sociales un video que grabó sin autorización el 20 de julio de 2023 en el cuartel de Distrito de [Aibonito], en el cual incluyó imágenes de su cliente, otros funcionarios y personas que se encontraban en el cuartel, mientras narraba su opinión sobre un probable asunto criminal futuro y tenía una conducta impropia hacia los funcionarios del NPPR.

El 21 de febrero de 2025 el letrado presentó su *Contestación a querella* en la que repasó el trasfondo fáctico, a fin de contextualizar el asunto que nos ocupa. Sostuvo que su presencia en el cuartel no alteró el proceso investigativo, sino que lo facilitó. Reconoció que planteó al agente Miller Colón la posibilidad de limitar la intervención a una amonestación y expedición de boletos de tránsito, sujeto a que el Conductor pidiera disculpas.[7] En esencia, el letrado esbozó que su actuación se limitó a salvaguardar los derechos constitucionales del Conductor mientras este permanecía bajo arresto. Negó intentar interferir con la prueba de alcohol, particularmente, indicar o sugerir que la tarjeta podía desaparecer o que pudiera soplar otra persona en lugar del Conductor. Además, manifestó que

> su proceder constituyó una defensa apasionada, diligente y vigorosa de los derechos e intereses de su cliente sin apartarse de la exigencia [que] los cánones de ética profesional le imponen de proveer una representación adecuada, de denunciar cualquier actuación de funcionarios que abusan de sus prerrogativas y, sobre todo, evitar que una persona fuese injustamente privada de su libertad sin que se le reconociera el derecho a estar asistido por un abogado, elemento esencial del debido proceso de ley. Más aún cuando se trataba de una crasa injusticia, ya que la detención no solo fue ilegal, sino, tan siquiera se le sometieron cargos, pues el cliente del promovido arrojó .01% en la prueba de alcohol.[8]

Argumentó que no existe evidencia de conducta impropia que justifique una sanción disciplinaria. A su vez, solicitó que este Tribunal considere, entre otros factores atenuantes, que no actuó de mala fe, que se trató de un incidente aislado, que goza de buena reputación profesional,

---

[7] *Contestación a querella*, pág. 2.
[8] (Énfasis en el original). Íd., págs. 9-10.

y que no enfrenta otros procesos disciplinarios. Reconoció que debe ser más celoso en su estilo de argumentación y afirmó que ceñirá sus funciones al más estricto rigor profesional y ético.

Posteriormente, el 14 de mayo de 2025 emitimos una *Resolución* mediante la cual designamos al Hon. Jorge L. Toledo Reyna, exjuez del Tribunal de Primera Instancia, como Comisionado Especial (Comisionado Especial). Finalizada su tarea, el 5 de febrero de 2026 este presentó el *Informe del Comisionado Especial*. En lo pertinente a la imputación por infringir el Canon 13 de Ética Profesional, *supra*, estimó necesario definir los efectos que pudo tener la publicación del video si se hubiesen sometido cargos penales en contra del Conductor. Planteó que se le imputaría un delito menos grave por el Art. 7.02 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como la *Ley de Vehículos y Tránsito*, 9 LPRA sec. 5001 *et seq*. Razonó que, aun en ese supuesto, la publicación -limitada a una página de Facebook- no sería suficiente para considerar que los criterios judiciales se verían afectados. En específico, sostuvo que el articulado pretende proteger la imparcialidad del ente juzgador y la publicación no resultaba en el efecto de parcialidad que se procura evitar. Añadió que en la grabación no se mencionan aspectos probatorios que pudieran haber incidido en la evaluación de la prueba en las etapas judiciales. Por consiguiente, determinó que la imputación al

Canon 13 de Ética Profesional, *supra*, no se probó a la luz del estándar de prueba requerido.

De otra parte, concluyó que se logró establecer con prueba clara, robusta y convincente que el licenciado García Rivera infringió los Cánones 18 y 38 de Ética Profesional, *supra*. En cuanto al Canon 18 de Ética Profesional, *supra*, si bien reconoció que de las grabaciones de las cámaras corporales de los oficiales del NPPR no surge que el licenciado García Rivera insinuara la desaparición de la tarjeta o la sustitución de la persona a quien se le administraría la prueba, el Comisionado Especial otorgó credibilidad al testimonio del agente Miller Colón y del teniente Malavé Ortiz. Entre otras cosas, destacó que sus testimonios coincidían en cuanto al momento y al lugar en que ocurrieron las expresiones imputadas, por lo que dio por hecho que el letrado realizó las manifestaciones alegadas en el segundo cargo. En lo pertinente, explicó que estos no informaron tales manifestaciones a la fiscal Soto Santiago por entender que formaban parte de una defensa adecuada, pero las consignaron en un documento intitulado *Conducta Inapropiada del Lcdo. Oscar García Rivera TSR RUA 15729* con fecha del 21 de julio de 2023, admitido como *exhibit* por estipulación de las partes. Además, apuntaló que el teniente Malavé Ortiz decidió exponer la conducta del licenciado García Rivera al ver en entredicho su ética profesional y la de los agentes interventores en la publicación de Facebook.

En lo pertinente al Canon 38 de Ética Profesional,

*supra*, el Comisionado Especial centró su análisis en las alegaciones de que el licenciado García Rivera gritó, interrumpió y desafió las instrucciones y la autoridad de los agentes mientras estos llevaban a cabo la intervención con el Conductor. En esencia, concluyó que este provocó un ambiente hostil que afectó el orden que debe prevalecer en un cuartel de la policía. Así, entendió probada la violación al Canon 38 de Ética Profesional, *supra*, en función de lo imputado en el Canon 18 de Ética Profesional, *supra*, y en el uso de un tono agresivo y altisonante al hacer sus reclamos.

Ahora bien, el Comisionado Especial mencionó que el licenciado García Rivera presentó tres (3) declaraciones juradas que se admitieron sin objeción de la OPG, en las que se exaltan el trato respetuoso y amable de este, así como su diligencia, preparación y compromiso en la defensa de sus clientes. Entre las circunstancias atenuantes a considerar mencionó las siguientes: (1) el licenciado García Rivera no ha tenido quejas o querellas presentadas en su contra anteriormente; (2) la abogacía es la única fuente de sustento para sus hijos; (3) sus deseos nunca fueron faltarle el respeto a los agentes del NPPR y señaló que, de estos haber estado presentes durante su testimonio oral, les hubiese pedido disculpas; (4) no existe prueba de incidentes similares, y (5) no medió deseos de lucro. Así las cosas, recomendó censurar enérgicamente al letrado.

El 24 de febrero de 2026 el letrado presentó una *Breve y respetuosa reacción a informe del honorable comisionado*

*especial* en la que reiteró que no hizo ninguna manifestación en torno a desaparecer la tarjeta o sustituir la persona a quien se le administraría la prueba. Planteó que las violaciones imputadas a los Cánones 13 y 18 de Ética Profesional, *supra*, no se probaron mediante el estándar de prueba requerido. Ahora bien, respecto al Canon 38 de Ética Profesional, *supra*, consideró razonable acoger la recomendación del Comisionado Especial por entender que es una sanción proporcional y adecuada.

Al día siguiente, la OPG presentó su *Reacción a informe del Comisionado Especial* en la que manifestó conformidad con la conclusión del Comisionado Especial respecto a los Cánones 18 y 38 de Ética Profesional, *supra*. No obstante, discrepó de la conclusión sobre el Canon 13 de Ética Profesional, *supra*, pues opinó que los hechos imputados en el primer cargo se probaron mediante las estipulaciones y la prueba admitida en evidencia. Puntualizó que, previo a grabar y publicar el video, el letrado tenía conocimiento de que el Conductor estaba detenido para la administración de una prueba de alcohol. Destacó que casi seis (6) horas después de la intervención aún había presencia de alcohol en la sangre, aunque en un índice inferior al límite dispuesto por ley. En esa dirección, expuso que, de haberse obtenido un resultado superior al permitido, el Conductor habría podido enfrentar un proceso criminal. De igual forma, resaltó que el letrado expresó que presentaría el contenido en la vista de determinación de causa para arresto. Bajo esa

premisa, afirmó que el licenciado García Rivera incumplió su deber de abstenerse de divulgar detalles y opiniones sobre un posible caso criminal futuro al publicar el video en las redes sociales. Sostuvo que las referencias del Canon 13 de Ética Profesional, *supra*, sobre el riesgo de afectar la adjudicación constituyen únicamente una explicación del propósito del canon y no una exigencia de demostrar un perjuicio real ni un impacto sobre el juzgador para configurarse su violación. De este modo, la OPG concluyó que del expediente surge prueba suficiente de que el letrado incurrió en los tres (3) cargos imputados en la *Querella*.

Procedemos a resolver sin trámite ulterior.

## II.

### A. El Canon 13 de Ética Profesional

El Canon 13 de Ética Profesional, *supra*, entre otras cosas, dispone lo siguiente:

> El abogado y el fiscal deben abstenerse de publicar o de cualquier manera facilitar la publicación en periódicos o a través de otros medios informativos, detalles u opiniones sobre casos criminales pendientes o que señalen la probabilidad de casos criminales futuros, pues tales publicaciones pueden obstaculizar la celebración de un juicio imparcial y perjudicar la debida administración de la justicia.

En <u>Gentile v. State Bar of Nevada</u>, 501 US 1030 (1991), el Tribunal Supremo de Estados Unidos reconoció que los estados pueden limitar la expresión extrajudicial de los abogados y de las abogadas sobre asuntos en los que intervienen ante los tribunales. S. Steidel Figueroa, *Ética del Abogado y Responsabilidad Disciplinaria*, Ediciones SITUM, 2016, pág. 267. La facultad surge tanto del hecho de que los abogados y las abogadas son oficiales del tribunal,

como del deber de fiducia que tienen respecto a la marcha eficiente de los procesos judiciales. Íd. En esos casos, la validez constitucional no está sujeta a una evaluación tan estricta como aquella que exigiría demostrar que las declaraciones del(de la) abogado(a) causarían un perjuicio real o una amenaza sustancial e inminente a un juicio justo. Íd.

En el pasado, hemos expresado que "todo abogado [y toda abogada] debe abstenerse de facilitar de cualquier forma la publicidad, a través de cualquier medio informativo, de su opinión con respecto a pleitos pendientes o a hechos que señalen la probabilidad de casos en el futuro". In re Clavell Ruiz, 131 DPR 500, 509-510 (1992). Asimismo, recalcamos que las abogadas y los abogados tienen un deber ético ineludible de abstenerse de publicar o de cualquier manera facilitar la publicación de detalles sobre casos criminales pendientes. Pueblo v. Rivera Nazario, 141 DPR 865, 884 (1996). Lo anterior responde a que "tales publicaciones pueden obstaculizar la celebración de un juicio imparcial y perjudicar la debida administración de la justicia". Íd., citando el Canon 13 de Ética Profesional, *supra*. En esencia, el propósito es proteger la pureza del proceso y evitar situaciones que pudieran "obstaculizar la celebración de un juicio justo e imparcial […]". Pueblo v. Rivera Nazario, *supra*.[9]

---

[9] Huelga apuntalar que el 1 de enero de 2026 entraron en vigor las nuevas Reglas de Conducta Profesional. Véase In re Rs. Conducta Prof. PR, 2025 TSPR 64, 216 DPR _ (2025). En lo pertinente, el inciso (a) de la Regla 3.6 de Conducta Profesional dispone lo siguiente:

## B. El Canon 18 de Ética Profesional

El Canon 18 de Ética Profesional, *supra*, establece que el letrado o la letrada debe desplegar su más profundo saber y habilidad en la defensa de los intereses de su cliente. In re Nazario Díaz, 195 DPR 623, 636 (2016). Si bien sanciona la falta de diligencia, lo distingue de actuaciones contrarias a la ley. Es decir, este canon insta a los y las miembros de la profesión legal a ser diligentes en la defensa de los intereses de su cliente, pero actuando dentro del marco ético. Íd. En lo pertinente, este canon estatuye lo siguiente:

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no s[o]lo la letra de [e]sta, sino el espíritu y los propósitos que la informan. 4 LPRA Ap. IX.

## C. El Canon 38 de Ética Profesional

Por su parte, el Canon 38 de Ética Profesional, impone a las abogadas y a los abogados el deber de conducirse de forma digna y honorable. Íd. Este deber responde a que cada miembro de la profesión legal es un reflejo de la misma. In

---

La persona que ejerce la abogacía que participe o haya participado en la investigación o litigación de un asunto no deberá hacer una manifestación extrajudicial o proveerle a una tercera persona documentación confidencial o que exponga a riesgos a su cliente de un caso que conoce o debe conocer razonablemente que será difundida a través de los medios de comunicación pública y que tendrá una alta probabilidad de causar o perjudicar sustancialmente el proceso adjudicativo del asunto. Íd.

re Stacholy Ramos, 207 DPR 521, 531 (2021). Por eso, deberán actuar con integridad, cuidado y un alto sentido de responsabilidad, teniendo siempre presente el impacto social de su labor y la dignidad de la institución que representa. In re González Foster, 2025 TSPR 27, 215 DPR __ (2025). El test para determinar si se vulnera el Canon 38 de Ética Profesional, supra, es "si la conducta ante nuestra consideración resulta contraria a la dignidad y [a]l honor de la profesión". In re Lebrón González, 198 DPR 350, 356 (2017).

D. **El rol del Comisionado Especial**

Como regla general, las determinaciones de hechos que formula un(a) Comisionado(a) Especial en un proceso disciplinario merecen gran deferencia. In re Pérez Rojas, 213 DPR 244, 259 (2023). Sin embargo, sus conclusiones de derecho no están ceñidas por esta norma. In re Prado Galarza, 195 DPR 894, 907 (2016). Ello se debe a nuestra función inherente de reglamentar la profesión y al hecho de que estamos en igual posición que el(la) Comisionado(a) Especial para evaluar e interpretar los preceptos éticos que rigen la profesión legal. Así pues, este Tribunal puede adoptar, modificar o rechazar el informe de un(a) Comisionado(a) Especial. In re Meléndez Mulero, 208 DPR 541, 554 (2022).

**III.**

Esbozada la normativa aplicable, procedemos a evaluar los hechos particulares que originaron el asunto disciplinario que nos ocupa, a fin de determinar si el

licenciado García Rivera incurrió en violaciones a los Cánones 13, 18 y 38 de Ética Profesional, *supra*.

En primer lugar, el Canon 13 de Ética Profesional, *supra*, expresamente prohíbe que un representante legal publique o facilite la publicación, a través de medios informativos, de detalles sobre casos criminales pendientes. Con ello, pretendemos evitar que se obstaculice la celebración de un juicio imparcial y que se perjudique la administración de la justicia.

No cabe duda de que, en este caso, el letrado publicó en sus redes sociales un video que grabó en el cuartel de la policía de Aibonito y cuyo contenido expone hechos relacionados con la detención de su cliente por conducir en un aparente estado de embriaguez. Sin embargo, tal cual razonó el Comisionado Especial, el articulado no puede ir dirigido a prohibir cualquier expresión. Destacamos que el letrado no mencionó aspectos probatorios que pudieran incidir en la evaluación de la prueba en las etapas judiciales. Es decir, la publicación no produjo el efecto perjudicial que el Canon 13 de Ética Profesional, *supra*, busca evitar. Ante tales circunstancias, determinamos que no contamos con prueba clara, robusta y convincente de que el licenciado García Rivera infringió el Canon 13 de Ética Profesional, *supra*.

Por otro lado, el Comisionado Especial otorgó credibilidad a los testimonios del agente Miller Colón y del teniente Malavé Ortiz respecto a que el letrado realizó las

manifestaciones alegadas en el segundo cargo sobre intervenir en el proceso para medir la concentración de alcohol. Aunque estas no constan en las grabaciones de las cámaras corporales de los oficiales, entendemos creíble lo expresado por los agentes interventores y coincidimos con la determinación del Comisionado Especial en cuanto a esta conclusión fáctica, por lo que no procede intervenir en su apreciación de la prueba. En particular, aunque el letrado negó esta imputación, es necesario resaltar que estas expresiones se consignaron en un documento intitulado *Conducta Inapropiada del Lcdo. Oscar García Rivera TSR RUA 15729* con fecha del 21 de julio de 2023 (solo un día luego de ocurridos los hechos), que luego se admitió como *exhibit* por estipulación de las partes. Así las cosas, determinamos que la conducta del licenciado García Rivera fue incompatible con lo dispuesto en el Canon 18 de Ética Profesional, *supra*.

Finalmente, al analizar las imputaciones de violación al Canon 38 de Ética Profesional, *supra*, el Comisionado Especial señaló que el letrado se condujo con un tono agresivo y altisonante al hacer sus reclamos, lo que provocó un ambiente hostil que afectó el orden que debe prevalecer en un cuartel de la policía. Ciertamente, el expediente confirma que el licenciado García Rivera elevó el tono de voz y se condujo de manera incompatible con el grado de decoro y solemnidad requerido, por lo que entendemos que menoscabó el honor y la dignidad de la profesión, en

contravención al Canon 38 de Ética Profesional, *supra*. A esos efectos, el Comisionado Especial manifestó lo siguiente:

> De la observación de los *exhibits* podemos notar que, si bien el querellado reitera su objeción a que los agentes hablaran con su cliente una vez establecido que tenía derecho a permanecer en silencio, lo hace con un tono de voz agresivo y desafiante. Los planteamientos acerca de su derecho a hablar con su cliente se hicieron de forma destemplada, al punto de que los *exhibits* nos ilustran lo difícil que fue para el teniente Malavé consultar la situación con la Fiscal Brenda Soto [Santiago] por el tono altisonante que utilizaba el querellado al hacer sus reclamos.

> No vimos en ninguno de los *Exhibits* 12 al 15 expresiones agresivas por parte de los agentes que se encontraban en el cuartel. Todo lo contrario, había solicitudes continuas al querellado de que se calmara y pudiese dialogarse el asunto. Es justo establecer que no se escucharon del querellado expresiones soeces contra persona alguna. Sin embargo, la forma de llevar sus reclamos y que se exhiben en los videos mencionados demuestran falta de temple y descontrol ante la situación.[10]

A la luz de lo expuesto, y en vista de que el letrado se allanó al informe del Comisionado Especial, entendemos apropiado acoger la recomendación del Comisionado Especial. Por esto, censuramos enérgicamente al licenciado García Rivera y le apercibimos de que en el futuro debe dar fiel cumplimiento a los preceptos éticos aplicables.

Notifíquese al licenciado García Rivera de esta Opinión *Per Curiam* y *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Se dictará Sentencia de conformidad.

---

[10] *Informe del Comisionado Especial*, pág. 29.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


*In Re*:


Oscar García Rivera
   (TS-15,729)          CP-2025-0002


SENTENCIA


En San Juan, Puerto Rico, a 31 de julio de 2026.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se censura enérgicamente al Lcdo. Oscar García Rivera (licenciado García Rivera) y le apercibimos de que en el futuro debe dar fiel cumplimiento a los preceptos éticos aplicables.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico al licenciado García Rivera.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emite una Opinión de conformidad a la cual se unen la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Estrella Martínez, la Jueza Asociada Rivera Pérez y el Juez Asociado señor Candelario López. El Juez Asociado señor Colón Pérez no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Oscar García Rivera
      (TS-15,729)

                        CP-2025-0002

Opinión de conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES a la cual se unieron la Jueza Asociada señora PABÓN CHARNECO, el Juez Asociado señor KOLTHOFF CARABALLO, el Juez Asociado señor ESTRELLA MARTÍNEZ, la Jueza Asociada RIVERA PÉREZ y el Juez Asociado señor CANDELARIO LÓPEZ

En San Juan, Puerto Rico, a 31 de julio de 2026.

Estoy de acuerdo con el resultado al que llega el Tribunal y los fundamentos expresados para ello. Aun así, quiero enfatizar por qué el Lcdo. Oscar García Rivera no infringió el Canon 13 del Código de Ética Profesional, 4 LPRA Ap. IX, vigente al momento de los hechos que hoy nos ocupan. Ese Canon no debe interpretarse como una censura automática y casi absoluta sobre lo que puede expresar un togado.

En síntesis, estimo que, al amparo de lo resuelto en Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991), y lo refrendado recientemente en las Reglas de Conducta Profesional de Puerto Rico, 4 LPRA Ap. IX-A, aplica el estándar de probabilidad alta de causar un

perjuicio sustancial a un proceso adjudicativo pendiente o futuro, al examinar la presunta violación del Canon 13. Así pues, correspondía resolver si el licenciado García Rivera conocía o debía conocer razonablemente que la información que difundió en sus redes sociales tenía probabilidad alta de perjudicar sustancialmente el proceso judicial posible relacionado con los hechos publicados. En consecuencia, solamente si se probaba mediante prueba clara robusta y convincente que el letrado conocía o debía conocer que la información que difundió tenía una probabilidad alta de perjudicar sustancialmente el proceso judicial posible, podíamos determinar que el togado infringió el Canon 13 del Código de Ética Profesional, supra. En tanto que la prueba no alcanzó ese estándar, el Tribunal da deferencia a la recomendación del Comisionado Especial y concluye que el licenciado García Rivera no transgredió el Canon 13.

En lo pertinente, el Canon 13, 4 LPRA Ap. IX, expresaba lo siguiente:

> El abogado y el fiscal deben abstenerse de publicar o de cualquier manera facilitar la publicación en periódicos o a través de otros medios informativos, detalles u opiniones sobre casos criminales pendientes o que señalen la probabilidad de casos criminales futuros, pues tales publicaciones pueden obstaculizar la celebración de un juicio imparcial y perjudicar la debida administración de la justicia. Cuando circunstancias realmente extraordinarias requieran hacer manifestaciones la expresión debe limitarse a las constancias de los autos, sin hacer referencia a la prueba de que se dispone o los testigos que se utilizarán, ni al contenido de sus testimonios.

En resumen, el Canon prohibía a un abogado publicar o facilitar la publicación, en cualquier medio, de detalles u

opiniones sobre casos criminales pendientes o futuros en los cuales esté involucrado. Además, condicionaba la posibilidad de hacer expresiones a que existan circunstancias excepcionales. "Si bien la prohibición no es absoluta, ciertamente es bastante restrictiva al condicionar la posibilidad de que un abogado se exprese públicamente de un caso a que existan circunstancias excepcionales para que pueda hacer referencia solo a las constancias del expediente". S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. Situm, 2016, pág. 267. El Canon 13 se fundamentaba en que las publicaciones posiblemente obstaculizarían un juicio imparcial y perjudicarían la administración de la justicia.

En el pasado hemos aplicado el Canon 14 del Código de Ética Profesional, 4 LPRA Ap. IX, —análogo al Canon 13, pero para casos que no son penales— como si se tratara de una regla *per se* contra todo tipo de manifestación o publicación hecha por un abogado o abogada sobre un proceso adjudicativo. Véase, In re Clavell Ruiz, 131 DPR 500 (1992). En ese caso expresamos que "todo abogado debe abstenerse de facilitar de cualquier forma la publicidad, a través de cualquier medio informativo, de su opinión con respecto a pleitos pendientes o a hechos que señalen la probabilidad de casos en el futuro". Íd., págs. 509-510. En aquella ocasión concluimos que el togado infringió el Canon 14 por la mera publicidad de sus manifestaciones, sin adentrarnos en un examen sobre la probabilidad de perjuicio

que estas podían ocasionar en el proceso adjudicativo. Íd., págs. 513-514.

Con la Opinión *per curiam* de hoy evitamos seguir ese camino. Pese a que la constitucionalidad del Canon 13 no se ha retado en este procedimiento, nuestro deber es adoptar una interpretación del Canon 13 que pase el escrutinio constitucional expuesto en Gentile v. State Bar of Nevada, supra, siempre que ello sea posible. Si bien es cierto que el Estado tiene un interés sustancial de prevenir que abogados y otros funcionarios judiciales impongan cargas innecesarias al sistema de justicia, lo cual se logra mediante la regulación de lo que pueden expresar y publicar, indudablemente ese interés debe balancearse con la garantía constitucional de libertad de palabra. Emda. I, Const. EE. UU., LPRA, Tomo 1; Art. II, Sec. 4, Const. PR, LPRA, Tomo 1. Véase, Gentile v. State Bar of Nevada, supra, págs. 1075-1076.

Sin duda, el balance interpretativo del Canon 13 se satisface al adoptar el estándar consignado en la Regla 3.6 de Conducta Profesional, supra, de probabilidad alta de causar perjuicio en un proceso adjudicativo. A saber, el inciso (a) de la Regla 3.6 de Conducta Profesional dispone que:

> La persona que ejerce la abogacía que participe o haya participado en la investigación o litigación de un asunto no deberá hacer una manifestación extrajudicial o proveerle a una tercera persona documentación confidencial o que exponga a riesgos a su cliente de un caso que conoce o debe conocer razonablemente que será difundida a través de los medios de comunicación pública y que tendrá una **alta probabilidad de causar o perjudicar sustancialmente el proceso adjudicativo del asunto.** (Negrillas suplidas). 4 LPRA Ap. IX-A.

El comentario [3] de la Regla 3.6 de Conducta Profesional, supra, deja claro que el estándar de probabilidad alta de causar perjuicio sustancial es un requisito *sine qua non* para la aplicación de la Regla. En aras de evitar pronunciamientos inconsistentes con el ordenamiento ético que entró en vigor con las Reglas de Conducta Profesional, supra, debemos adoptar el estándar de la Regla 3.6 de Conducta Profesional para evaluar la violación alegada del Canon 13 en este caso.

El interés público que fundamenta este proceder quedó anotado en el comentario [1] de la Regla 3.6 de Conducta Profesional, supra, el cual dicta lo siguiente:

> Sin duda, encontrar un balance entre el derecho a un juicio justo y la libertad de expresión es difícil. Preservar el derecho a un juicio justo implica limitar la información que se puede divulgar sobre los procedimientos antes del juicio, particularmente cuando se trata de un juicio por jurado. De no existir estas limitaciones, el resultado sería permitir la anulación práctica de los efectos protectores de las reglas de decoro forense y las reglas de exclusión de prueba. Por otro lado, existen intereses sociales vitales que son atendidos por la libre difusión de información en relación con hechos que tienen consecuencias legales o sobre los procesos judiciales. El público tiene derecho a conocer sobre amenazas a su seguridad y las medidas para garantizarla. También tiene un interés legítimo sobre la manera en que se conducen los procedimientos judiciales, especialmente en los asuntos de interés público. Además, el tema de los procedimientos legales impacta directamente el debate y la deliberación sobre asuntos de política pública.

En virtud de lo anterior, el licenciado García Rivera no infringió el Canon 13 del Código de Ética Profesional, supra, pues no se probó, mediante prueba clara, robusta y convincente, que con probabilidad alta la información difundida por el letrado hubiera perjudicado sustancialmente el proceso

judicial posible. En esa línea, estoy de acuerdo con el resultado final de censurar enérgicamente al letrado por las demás infracciones probadas y apercibirle de que en el futuro debe dar fiel cumplimiento al ordenamiento ético. Por todo lo anterior, me uno a la Opinión del Tribunal.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado